UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FERNANDO FONTANEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-cv-02073 (RC) |
| | ) | |
| | ) | |
| DAVID H. BERGER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Currently before the Court is Plaintiff Fernando Fontanez's ("Plaintiff's") Motion for Permanent Injunction ("MPI"), ECF No. 6, and the Combined Opposition to Plaintiff's Motion for Permanent Injunction and Motion to Dismiss ("MTD"), ECF No. 17, and Memorandum in Support[1] ("MTD Mem."), ECF No. 17-1, filed by Defendant General David H. Berger, Commandant of the United States Marine Corps ("the Commandant"). For the reasons explained herein, the Commandant's Motion to Dismiss will be granted and Plaintiff's Motion for Permanent Injunction will be denied.

## I.   BACKGROUND

Plaintiff served as a member of the United States Marine Corps in the 1980's. *See* Complaint ("Compl."), ECF No. 1 at 1; *see also* MTD Mem at Declaration of Bradley J. Goode

---

[1]   The Commandant filed an identical duplicate of this Memorandum at ECF No. 18.

("Goode Decl."), Deputy Director of the Board for Correction of Naval[2] Records[3] ("the BCNR"),

ECF No. 17-2, ¶ 2.  He initially applied to the BCNR for administrative review in March 2013.

Goode Decl. ¶ 2.  Plaintiff requested that the BCNR upgrade his military discharge from "Other

than Honorable," after his separation from the Marine Corps in 1986.  *Id.* (citing BCNR Docket

No. 3159-13); *see* MPI Exhibits ("MPI Exs."), ECF No. 6-1, at 7.[4]  The BCNR reviewed Plaintiff's

application, and in March 2014, concluded that it did not contain sufficient evidence of probable

material error or injustice and declined to grant any relief.  Goode Decl. ¶ 3.

Plaintiff sought reconsideration of that determination by letters dated June 3, 5, and 11,

2014.  *Id.* ¶ 4.  On June 17, 2014, the BCNR concluded that Plaintiff had not presented new and

material evidence and declined to reconsider the decision.  *Id.*  He again sought reconsideration,

by letter, on June 23, 2014.  *Id.* ¶ 5.  The BCNR again concluded that Plaintiff had not presented

new and material evidence and declined to reconsider the decision on July 31, 2014.  *Id.*  Plaintiff

---

[2]     "The Marine Corps is within the Department of the Navy[,]" *Neal v. Secretary of Navy and Commandant of Marine Corps*, 639 F.2d 1029, 1033 n.4 (3rd Cir. 1981) (citing 10 U.S.C. § 5011), and "[u]nder the direction of the Secretary of the Navy, the Commandant of the Marine Corps shall exercise supervision over . . . the Marine Corps.[,]" *id.* (citing 10 U.S.C.§ 5201(d)).

[3]     Courts may take judicial notice of administrative documents and agency actions, which are generally of public record, without converting a motion to dismiss to a motion for summary judgment, *see Vasser v. McDonald*, 228 F. Supp. 3d 1, 9–12 (D.D.C. 2016) (collecting cases), particularly where those documents are "central to the plaintiff's claim[,]" *Slate v. Pub. Defender Serv. for the Dist. of Columbia*, 31 F. Supp. 3d 277, 287–88 (D.D.C. 2014), *appeal dismissed*, No. 14-7064 (D.C. Cir. Dec. 4, 2014).   If courts were unable to take judicial notice of such documents, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Strumsky v. Washington Post Co*., 842 F. Supp. 2d 215, 217–18 (D.D.C. 2012) (internal quotation marks and citations omitted). "Moreover, a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint." *Id*. (internal quotation marks and citations omitted); *see Redmon v. United States*, 80 F. Supp. 3d 79, 83–84 (same); *see also Marshall v. Honeywell Tech. Sols., Inc*., 536 F. Supp. 2d 59, 65 (D.D.C. 2008) (considering exhibits and affidavits filed in support of a 12(b)(6) challenge without converting to summary judgment).

[4]     The Court references the ECF-generated page numbers in citing to the MPI Exhibits.

again requested reconsideration by letters dated August 18, 2014, and August 22, 2014.  *Id.* ¶ 6. Again, the BCNR concluded that Plaintiff had not presented new and material evidence and declined to reconsider the decision on August 28, 2014.  *Id.*

Plaintiff next applied for reconsideration on May 5, 2015, but this time, he submitted a "DD Form 149."  *See id*. ¶ 7; *see also Gilbert v. Wilson*, 292 F. Supp. 3d 426, 429–30 (D.D.C. 2018) ("an officer seeking modification of his or her military record *must* submit an 'Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code, Section 1552,' called a 'DD Form 149,' to the Board.") (emphasis added) (other citations omitted).  After receipt of the DD Form 149, the BCNR determined that Plaintiff had properly submitted new evidence, and it took the application under review.[5]  *See* Goode Decl. ¶ 7 (citing BCNR Docket No. 6132-15).  After review, on July 28, 2015, the BCNR issued a letter to Plaintiff, concluding that any new evidence was insufficient to establish a probable material error or injustice and declined to grant relief.  *Id.*

On February 3, 2015, Plaintiff applied for reconsideration again by submitting another DD Form 149, but his application was denied by the BCNR because it was a duplicative of his last application.  *See id*. ¶ 8.  Plaintiff then unsuccessfully sought reconsideration again in August 2017. *See* MPI Exs. at 12–15.  He again requested reconsideration, with the assistance of Congresswoman Eleanor Holmes Norton, by letter, on March 19, 2018.  *See id*. at 1–5, 8–11; Goode Decl. ¶ 9.  On July 18, 2018, the BCNR concluded that Plaintiff did not present new and material evidence and declined to reconsider its position.  *See id.*

---

[5]    Although service members must typically petition for administrative relief with the BCNR "within three years" of an alleged error, the BCNR seemingly decided to waive the administrative limitations period "in the interest of justice."  *See* 10 U.S.C. § 1552(b).

3

On August 2, 2021, Plaintiff, who is proceeding *in forma pauperis*, initiated this matter by filing a *pro se* Complaint. The prolix complaint totals 142 pages and is difficult to follow. As pleaded, it fails to formally comply with Federal Rule 10(b) and D.C. Local Civil Rule 5.1 (d), (e), and (g). The first page of the Complaint is hand-written and purports to bring this matter pursuant to 10 U.S.C. § 1552, seeking to correct his military service record. *See id*. at 1. He maintains that the Marine Corps has failed to correct his record "for twenty years," and that the Commandant and Counsel for the Commandant ("Counsel") ignored "new evidence" that he submitted in March 2021. *See id*. He also seemingly alleges that the Marine Corps, and others, have violated his constitutional rights pursuant to 42 U.S.C. § 1983. *See id*. In addition to a record correction, Plaintiff demands that the Court order the Marine Corps to "pay [his] back pay, pension[,] and health benefits." *See id*.

The remainder of the Complaint consists of exhibits ("Compl. Exs."), ECF No. 1-2, which do very little to add substance to Plaintiff's claims. These exhibits—mostly email communications—are, overall, ambiguous and fantastical.[6] For example, Plaintiff's "new evidence," submitted to the Commandant, Counsel, and others, in March 2021, consists of accusations that the Commandant, Counsel, and the BCNR, among others, engaged in "substantial lies, criminal activity, false statements[,] etc.; all [also] perpetuated by POTUS Clinton, Bush Jr., Obama[,] and Trump[,] engaged in stealing [Plaintiff's] identity, depriving [Plaintiff] of [his] backpay and military pension[,] etc.; attempting to also steal billions in naming/publicity rights [

---

[6]     On August 16, 2021, Plaintiff also filed a 108-page Notice ("Not."), ECF No. 4, containing substantially similar conspiracy theories and attaching substantially similar exhibits in support of those theories.

] worth billions[.]"  Compl. Exs. at 17–24;[7] *see id.* at 30–31 (email to the Commandant and Counsel from March 25, 2021, announcing that, by and through "13 emails[,]" Plaintiff would show that he is entitled to "backpay/pension" and a change in "star rank" because the Marine Corps, CNN, CBS, Jane Fonda, and others, are "traitors" who have been attempting to murder him for "37 years," and that they were also engaged in various criminal conspiracies, cover-ups, and terrorist acts, due the influence of "oil" and "Saudi monies"); *id.* at 32–38 (email to the Commandant from March 25, 2021, offering conspiracy theories regarding Osama Bin Laden, 9/11, and the "war on terror[,]" and stating that Plaintiff took a "non-school attitude (sexy and 17 stray cats) after 911 . . . [and] made [his] way to Washington D.C." to earn for "Capitol Hill . . . trillions indeed[;]" *id.* at 92–94 (email to the Commandant and others from March 24, 2021, regarding a book that Plaintiff authored and his financial plan for the United States and its "global monies," as well as conspiracy theories regarding Greenpeace, 9/11, and terrorist attacks); *id.* at 39–40 (emails to the Commandant from March and February 2021, arguing that Plaintiff's denial of relief as to his  military record and benefits could be directly attributed to murder of his Marine Corps mentor and an attempt on Plaintiff's life by the military, Jane Fonda, and others, who have been motivated "to stop" him  from obtaining "monies hidden" in Afghanistan and also because he identifies as "GOP – Nixon Camp – 1974, hetero"); *id.* at 95–101 (same); *id.* at 42–59 (emails to a hodgepodge of officials, agencies, entities, and individuals, from April 2021, discussing Plaintiff's book, quoting Aldus Huxley, and offering conspiracy theories regarding: the "global financial crisis," a sheriff's office in Wisconsin staffed by personnel who are allegedly "Nazi war criminals," "anesthesia homosexual rapists 911 terrorist perverts," the bible, Jane Fonda, Al

---

[7]    The Court references the ECF-generated page numbers in citing to the Complaint Exhibits.

Qaeda, and finally, attaching images from Mad Magazine, of various musical artists and their albums, and of Plaintiff himself); *id.* at 60–69 (same).

Plaintiff's exhibits also demonstrate that his communications to the Marine Corps, the Navy, and others, have set forth these types of conspiracy theories for years.  In September 2017, Plaintiff emailed a United States Navy officer, alleging that: his service record was "falsified," he was "struck by a car by anti-military factions in Chicago," and that, as a result, he is owed "backpay, pension, honorable discharge, and even and honorable PHD with four star promotion effective immediately for his continued effort to have a defeat of the communist/Al Qaeda attack on the United States," and, Time Warner, CBS, Disney, and other media outlets, have been conspiring against him with federal actors for 35 years, including subjugation to false arrest and drugging him while he was in the Marine Corps.  *See* MPI Exs. at 6.  In January 2020, Plaintiff again emailed a Navy officer, and alleged the "Marines . . . [and the] U.S. Marshal[s] Service – Chicago" conspired with former United States Presidents, with the BCNR, Commandant, and Counsel, along with "the Kennedy[]s, Katie C[o]uric, and Hanoi Jane Fonda with Ted Turner[,]" to deny him various forms of relief.  Compl. Exs. at 25.  Plaintiff further contended that the agency's denial of relief was fundamentally rooted in "the communist sneak attack on America since the seventies[,]" and an attempt by the "international media," specifically "CBS/CNN," to murder him and to block his concerted efforts to reverse the national debt.  *See id.*; *see also* MPI Exs. at 16 (Plaintiff's letter to Congresswoman Holmes Norton's staff, seeking to "clarify" that he was not necessarily "hit by a Time Warner truck" but was more accurately targeted by Time Warner "in a sneaky plot to steal [his publicity rights] [ ] worth as much as 'Batman[.]' ").

In May 2020, he emailed with the Naval Criminal Investigative Service, alleging that he had "absolute proof of genocidal crimes against humanities – aggression pre-knowledge of

6

911/corona virus intentional action preventable [and] . . . biowarfare data[.]"  Compl Exs. at 26.

He also demanded a "military tribunal" and sought to "remove [the] illegal anti-military puppet

government-Trump/Biden etc."  *Id.*   In June 2020, he emailed numerous agencies, officials,

organizations, and individuals, citing his book "AmericasFirstBill.com – America First Project –

the Real 911[,]" and requesting a "global meeting in Washington D.C. with all the world's leaders

to enforce the US foreign policy protocols[,]" and attempting to work with the "US Marines to get

the world monies to buy American and profit all in the world like Nixon proved in the seventies[.]"

*Id.* at 28–29; *id.* at 76–77 (same); *id.* at 78–79 (same in November 2020).   Again, in November

2020, he emailed numerous entities and individuals, seeking a meeting with military officials to

discuss his military record and administrative appeal, demanding the "immediate cessation of [his]

identity theft and return of all [his] burglarized property by the United States government," and

touting various conspiracy theories as a "senior level intelligence advisor" and "rock-n-roll

soldier."  *See id.* at 80–85.  These conspiracies involved: the media, nuclear attacks, communism,

rape and murder service members (including his mentor), attempted rapes and murders of and by

public figures, faked deaths, China, South Korea, North Korea, Syria, Afghanistan, 9/11, "false

politicians," Ted Turner and Jane Fonda, "bio-terror," national security, United States Presidents,

the alleged Nazis in Wisconsin, "snuff movies," surveillance by federal law enforcement, false

arrests, several attempts on Plaintiff's life and theft of his identity, Plaintiff's book, the media,

"Saudi money," tax fraud, poverty, COVID-19, "gangster-rap," the Breeder's Cup, the television

show "Jeopardy," and copyright infringement.  *See id.*; *see also* MPI Exs. at 10 (Plaintiff's

communications from January 18, 2018, with Congresswoman Holmes Norton) (same).

In December 2020, Plaintiff emailed several federal officials indicating his intention to run

for President.  *See* Compl. Exs. at 86.  That same month, Plaintiff again emailed numerous

agencies, officials, organizations, and individuals, discussing: 9/11, Afghanistan, "hidden monies," communists, his book and his financial plan for the United States and "global commerce," "global beaver hunts," and lyrics from rock songs. *See id.* at 88–89; *id.* at 90–91 (email from January 2021) (same). In February 2021, Plaintiff formally reported Congresswoman Nancy Pelosi to the Office of Congressional Ethics, alleging that she and other federal officials harmed his "Marine Corps career[,]" squandered his money, committed "violent acts" against him, and stopped him from graduating from high school. *See id.* at 73.

Plaintiff also attaches a 28-page undated "report" that he claims he submitted "to Secretary of Defense James Norman Mattis and White House Chief of Staff John Francis Kelly." *See id.* at 111–39. This report quotes song lyrics, attaches cartoons and photographs of Plaintiff with rock bands, discusses his book and financial plan for the county, and sets forth various alleged machinations of wrongdoing, including: a "sneak attack on the international stock market and the United States by Communist China," other communists, "red scares," and "communist propaganda," an ongoing conspiracy between China, Iraq, Saddam Hussein, Al Qaeda, Pakistan, and the U.S. media, the media's illegal coverage "of oil" and their "use of 'em technology' to plant idea[]s in minds to do terror," "rhetoric of anti-Americans . . . with their heinous plots," "hidden monies," "hypocrites [who] slander the sacred halls of truth," government officials with "anti-Nixon attitudes," Timothy McNiven and the Rockefellers, an attempt to assassinate Plaintiff "by illegally filming a drug rape video of him," cover-ups by "CIA Director George Tenet," Russia's sale of "weapons of mass destruction," "insider trading schemes," 9/11 and other terrorist attacks, and, "worldwide economic destruction," including a "great conspiracy against [United States] currency." *See id.* at 111–133.

This "report" then attributes these conspiracy theories to Plaintiff's "back-pay and pension case and [his request] for clearance of falsified data in the service record book claiming [that Plaintiff] was discharged for drugs[,]" and further contending that "he can provide ample proof of this material fact." *See id.* at 134.  This "ample proof" focuses heavily on alleged attempts to harm and murder Plaintiff and his loved ones. *See id.* at 137.  For example, he states that "[t]he attempted murder of this Marine in 1990 – blowing up a car to burn him alive — four years after the hit and run [attempt on his life] is also now under the microscope as clear proof of the plot to make this Marine look like someone discharged for drug use and who must be killed!!" *Id*.  Plaintiff further alleges that "anti-military communists" have been exerting influence over the Marine Corps, including a "plot to rob and kill [Plaintiff] for name and publicity rights worth billions due to him." *Id.* at 138.  He goes on to name several individuals who he believes were "recruited by Time-Warner," and by CNN, to steal from him and murder him.  *See id*.  He contends that local law enforcement and other individuals, in coordination with "CBS in Milwaukee" have been paid to "steal his name" and kill him because they are "idiotic, high-school-dropout, Wisconsinite fools [who] have been bragging about their money and about infiltrating law enforcement to hide as 'sleepers' attempted to overthrow the lawful government of the United States of America." *See id.* at 138–39.  He believes that these individuals also attempted to kill him "in high-speed alcohol-fueled car accidents." *Id.* at 139.  Finally, he theorizes that "there have been several attempts to restage [Plaintiff] via V2K media and by the US Marshal[s] Service and the FBI to film [Plaintiff's] death." *Id.*; *see also* MPI Exs. at 18 (undated letter from Plaintiff to the Department of Defense alleging that the BCNR's denials could be attributed to a vast conspiracy to steal from and murder him, as retaliation for his approval of President Nixon, and to prevent Plaintiff's classified national security information from leaking).

The remainder of Plaintiff's "ample proof," within the "report," consists of yet additional allegations of the Marine Corps' collusion and its involvement with: "character assassination;" retribution for Plaintiff's attempts to promote the United States' economy and circumvent terrorist attacks, including: "a report about the Chinese sneak attack in 1991 stopping the uprising of terror, and getting the US its['] money;" "human garbage" and "numerous self-admitted traitors and antimilitary hate-crime perpetrators who have . . . basically shot their mouths off" about Plaintiff." Compl. Exs. at 134–39.  He also cites to alleged murders of other Marines; "pre-knowledge of 911," collusion by the media, and faked deaths and plots waged against him by "Communist China" and "set up[s] by antimilitary communists." *Id.*

The Court initially reviewed the Complaint, *see* 28 U.S.C. § 1915(e)(2), on August 23, 2021, and found that it failed to comply with Federal Rule 11(a) because it did not bear Plaintiff's signature.  *See* Minute Order (Aug. 23, 2021).  Therefore, it ordered Plaintiff to file, within 30 days, an amended complaint bearing his signature.  *Id.*  On August 30, 2021, Plaintiff instead filed a two-page hand-written complaint, similar to an Errata ("Err."), ECF No. 5, bearing his signature. This Errata raises similar hand-written allegations as those contained in the Complaint.  Therein, Plaintiff alleges that his "service record book" wrongfully reflects that he was "discharged for drugs," and that his record was intentionally falsified as part of an identity theft conspiracy against him.  *See* Err. at 2; *see also* Compl. Exs. at 28.  In addition to a correction of his record, and an award of "pay, full pension, back pay[,] and health benefits[,]" the Errata additionally seeks an injunction to prohibit any further alleged theft of his identity.  *See* Err. at 2.

On September 2, 2021, Plaintiff filed a submission entitled "Supplemental Data Affirming Criminal Identity Theft Activity Warranting Issuance of a Permanent Injunction Barring Identify Theft of Name/Likeness Worth Billions to Plaintiff," which the Court generously construes as the

pending Motion for Permanent Injunction.  This Motion totals 51 pages, bears similarity to the Complaint, and fails to comply with Federal Rules 7(b)(2), 10(b), and D.C. Local Civil Rule 5.1 (d), (e), and (g).

In the Motion for Permanent Injunction, Plaintiff provides the Court "with supplemental data confirming malicious activity surrounding Plaintiff's military case seeking pension, back pay, health benefits etc."  MPI at 1.  The Motion then devolves into broad conspiratorial allegations and ruminations.  Plaintiff contends that "[t]here is no claiming that Plaintiff was hit by a Time Warner Truck at all and indeed it is known that [ ] Congresswoman Eleanor Holmes Norton is engaged with Plaintiff's identity theft and attempted murder."  *Id.*  He again maintains that his "name/likeness is worth billions . . . gleaned from years of global/national publicity stunts in Chicago from 1982–1993 covered by media etc."  *Id.*  He alleges that he "stands to lose billions in defendant[']s grand larceny scheme[,]" which has been orchestrated between Congresswoman Norton, the Commandant, the government, and other actors, to murder him, steal his "name/likeness" and to infringe on the copyright of "book seven of Plaintiff's book series (that gets the U.S. Government quadrillions in extra monies while duly eliminating the national debt." *Id.* at 1–3.  Plaintiff believes that these conspirators are illegally profiting fabricating his military record, and he takes issue with their purported refusal to "support" or "lobby" to "Congress for any bill to get the U.S. Government monies[,] like Plaintiff has lobbied under Presidents Bush Jr., Obama, Trump[,] and Biden."  *See id*. at 2–3.  The remainder of the Motion consists of exhibits, more specifically, emails from July and August 2021, from Plaintiff to an assortment of individuals, entities, and federal agencies and officials, expressing the same conspiratorial allegations already postulated. *See* MPI Exs. at 19–51.

On September 3, 2021, this matter was assigned to this Court.  On September 14, 2021, Plaintiff filed an "Attachment to the Complaint" ("Attach."), ECF No. 8, which seeks to supplement the Complaint and Errata.  Despite filing this submission without leave to do so, the Court has nonetheless considered it, given Plaintiff's *pro se* status.  This Attachment again raises substantially similar conspiracy theories as those in Plaintiff's previous submissions.  *See generally* Attach.  He asserts that his "entire criminal record at the federal, state[,] and local level [should] be purged due to false arrests facilitating [an] identity theft scheme [and] attempting to deny Plaintiff Marine Corps pension, backpay[,] and health benefits."  *Id.* at 1.[8]  Thereafter, Plaintiff alleges that "there have been a series of false arrests in Chicago and Wisconsin going back to the 1980's[,] all engineered to give rationale for murder [and] attempting to stop Plaintiff from getting the U.S. Government 'the Fernando Fontanez' dollar."  *Id.*  He again cites to his book "AmericasFirstBill.com – America First Project – the Real 911[,]" and discusses his ability to free the United States from debt, obtain "quadrillions" through a "secondary Treasury account," and to improve the United States' foreign policy position.  *See id*.

The remainder of the Attachment includes an appeal brief, *id.* at 2–8, filed by his court-appointed attorney with the Social Security Administration ("SSA"), in a previous SSA appeal, remanded from this District back to the Administration for resolution, *see id.; see also Fontanez v. Saul*, No. 17-cv-2844, as well as joint motion to enter final judgment in that matter, *see* Attach at 9–11, *see* Attach. at 10.  These documents bear no relevance to the instant matter.

A flurry of other filings from Plaintiff were resolved, and shortly thereafter, the Commandant filed the pending Combined Opposition to Plaintiff's Motion for Permanent

---

[8]     The Court references the PDF-generated page numbers in citing to the Attachment.

Injunction and Motion to Dismiss.  On January 13, 2022, Plaintiff filed a Combined Opposition to the Motion to Dismiss and Reply to the Commandant's Opposition to the Motion for Permanent Injunction ("Opp'n"), ECF No. 20.  On January 19, 2021, the Commandant filed a Reply, ECF No. 21.

On April 20, 2022, and on May 23, 2022, Plaintiff filed two Motions for Orders, ECF Nos. 24, 27, seeking the Court's resolution of the Motion to Dismiss and Motion for Permanent Injunction.  Those Motions will be denied as moot.

## LEGAL STANDARDS

### Motion to Dismiss

The Commandant moves to dismiss pursuant to Federal Rules 12(b)(1) and 12(b)(6).  *See* MTD at 1; MTD Mem. at 1–4.  In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), a court must "treat a complaint's factual allegations as true . . . and must grant a plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  Where an action is brought by a *pro se* plaintiff, as in the instant matter, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers[,]" *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  Nevertheless, a court need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept a plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

13

## Subject Matter Jurisdiction

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002), *aff'd*, 409 F.3d 414 (D.C. Cir. Jun. 3, 2005), *cert. denied*, 546 U.S. 1173 (2006).  Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F. 3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).  Further, a court is required to dismiss an action "at any time" if it determines that the subject matter jurisdiction is wanting.  *See* Fed. R. Civ. P. 12(h)(3).

When reviewing a challenge pursuant to Rule 12(b)(1), a court may consider documents outside the pleadings to assure itself that it has jurisdiction.  *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (holding same); *see also Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject-matter jurisdiction.)."  By considering documents outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(1), a court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into

14

a motion for summary judgment" when documents extraneous to the pleadings are considered by a court.  *Haase*, 835 F.2d at 905.

### Failure to State a Claim

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal,* the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* at 678.  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged."  *Id.* at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Additionally, when a plaintiff is proceeding *in forma pauperis*, a court is mandated to dismiss a complaint which fails to state a claim upon which relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii); *see also Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that a *sua sponte* dismissal is appropriate for failure to state a claim pursuant to Fed. R Civ. P. 12(b)(6)).

In ruling upon a motion to dismiss for failure to state a claim, a court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the

complaint, matters of which a court may take judicial notice, and matters of public record.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. Appx. 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)).  In considering a motion to dismiss a complaint brought by a *pro se* plaintiff, a court must also consider the submissions outside of the complaint, including a plaintiff's opposition to the motion to dismiss.  *See Brown v. Whole Foods Market Group, Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).

## 10 U.S.C. § 1552 & The Administrative Procedure Act ("APA")

The correction of military records is governed by 10 U.S.C. § 1552.  Under 10 U.S.C. § 1552(a)(1), "[t]he Secretary of a military department [acting through a civilian board] may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."  *See Schwalier v. Panetta*, 839 F. Supp. 2d 75, 82 (D.D.C. 2012), *appeal transferred sub nom.*, 734 F.3d 1218 (D.D.C. 2013), *aff'd sub nom.*, 776 F.3d 832 (Fed. Cir. 2015), *cert. denied*, 576 U.S. 1035 (2015).  A correction, if made, must comply with the "procedures established by the Secretary concerned."  *Id.* (citing 10 U.S.C. § 1552(a)(3)(A)).  Moreover, "[t]he Secretary concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of [the service member's] . . . service[.]"  10 U.S.C. § 1552(c)(1).

The "BCNR is a civilian board created by the Secretary pursuant to 10 U.S.C. § 1552." *McGrady v. Winter*, 810 F. Supp. 2d 281, 284 n.5 (D.D.C. 2011), *aff'd*, 548 Fed. Appx. 622 (D.C. Cir. 2013). "Unless the matter at issue is specifically reserved to the Secretary, BCNR has authority[,]" on behalf of the Secretary—and therefore on behalf of the Commandant—to take final action to amend a military personnel record." *See id.* (citing 32 C.F.R. § 723.6(e)).   An agency's "decision to deny corrective relief is reviewable under the APA," *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989); *see* 5 U.S.C. §§ 701 *et seq*., and it "can be set aside if [it is] arbitrary, capricious or not based on substantial evidence[,]" *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *see also* 5 U.S.C. § 706(2).

### III.  DISCUSSION

This matter must be dismissed for several reasons, discussed below.

### The Claims are Frivolous

The Commandant argues that the Court cannot exercise subject matter jurisdiction over a frivolous complaint, MTD Mem. at 4–5, and the Court agrees, *see Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) ("Over the years, this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.' ") (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)); *Tooley v. Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009) (examining cases dismissed "for patent insubstantiality," including where the plaintiff allegedly "was subjected to a campaign of surveillance and harassment deriving from uncertain origins."). A complaint that lacks "an arguable basis either in law or in fact" is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Moreover, "[a] complaint plainly abusive of the judicial process is properly typed malicious." *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C. Cir. 1981).

17

Put differently, a court is obligated to dismiss a complaint as frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), or "postulat[e] events and circumstances of a wholly fanciful kind," *Crisafi*, 655 F.2d at 1307–08. Plaintiff's Complaint and supporting submissions all satisfy this standard.

After careful review, it is clear that Plaintiff's claims are all predicated on his belief in a long-running and far-reaching conspiracy, executed between countless entities and individuals, allegedly causing him many misfortunes for the past several decades. *See, e.g.*, Compl. at 1; Err. at 2; MPI at 1–3; Attach. at 1; Not. at 1–108; Compl. Exs. at 25, 28, 39–40, 60–69, 80–85, 92–94, 111–133, 137; MPI Exs. at 6, 10, 16, 19–51. Included in those misfortunes are the denials of his requests to correct his military record and to award him back pay, pension, and benefits. *See id*. Plaintiff contends that the Marine Corps and its officials have been influenced by many outside "anti-military" evildoers and that those evildoers have intentionally interfered with his entitlement to relief and forged his military record. *See, e.g.*, Err. at 2; Attach. at 1; MPI at 1–3; Opp'n at 2–5; Compl. Exs. at 26, 134–39; MPI Exs. at 6.

At the root of this conspiracy is Plaintiff's belief that these evildoers seek to, at best, silence and remotely control him, and at worst, violently harm or kill him, because they are threatened by his expert knowledge on various topics, including, but not limited to: national security, international foreign policy, terrorist threats, financial strategies, and the national debt. *See, e.g.*, Compl. at 1; Err. at 2; MPI at 1–3; Attach. at 1; Not. at 1–108; Compl. Exs. at 25, 28, 39–40, 60–69, 80–85, 92–94, 111–133, 137; MPI Exs. at 6, 10, 16, 19–51. He maintains that his alleged counterfeit military record is but one example in an extensive rouse by these bad actors to unfairly withhold his benefits, smear his name, and steal his identity to reap the benefits of a financial windfall. *See id*. He also maintains that these conspirators are retaliating against him based on his

18

status as a heterosexual male and due to his political beliefs. *See, e.g.*, Compl. Exs. at 28–29, 39–40, 60–69, 76–79, 95–101, 111–133; MPI Exs. at 18.  Plaintiff's allegations are, on the whole, digressive, and at times, crass, malicious, and inflammatory. *See, e.g,* Compl. Exs. at 60–69, 111–13, 134–39.  For this reason alone, the Complaint must be dismissed. *See Walsh v. Hagee*, 900 F. Supp. 2d 51, 54, 58–60 (D.D.C. 2012) (dismissing plaintiff's § 1552 claim for want of jurisdiction because it stemmed "from the frivolous allegation of a widespread government conspiracy involving government surveillance and fanatical meddling with [Plaintiff's] [§ 1552] application" and to "harass and assault his family[.]") (collecting cases), *aff'd*, No. 12–5367, 2013 WL 1729762 (D.C. Cir. Apr. 10, 2013); *Jones v. Sullivan*, No. 94-5064, 1995 WL 551256, at *1 (D.C. Cir. Aug. 17, 1995) (affirming trial court's dismissal of conspiracy claims, including those arising out of § 1552(a), as frivolous); *Slupowski v. Dep't of U.S. Navy*, No. 11–1201, 2011 WL 4459117, at *1 (D.D.C. Sept. 26, 2001) (dismissing case for want of subject matter jurisdiction where plaintiff made allegations against a "hodgepodge" of federal officials, agencies, and branches of government, as well as private entities and individuals, and noting that "Plaintiff attache[d] to the complaint a form captioned 'Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code, Section 1552,' but his typed text is mostly incoherent and, at most, presents the sort of delusional scenarios warranting dismissal under § 1915(e)(2) as frivolous."); *see also Butz v. Economou*, 438 U.S. 478, 507–08 (1978) ("[F]irm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits.").

## Plaintiff has Failed to State a Claim

Even if the Court could overlook the frivolousness of Plaintiff's allegations, Plaintiff has nonetheless failed to state a claim for several reasons. *First*, as already noted above, the Complaint and its supplements fail to comply with several Federal and Local Rules of Civil Procedure.

Critically, it fails to comply with Federal Rule 8(a) which requires "(1) a short and plain statement of the grounds for the court's jurisdiction [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see Iqbal*, 556 U.S. at 678–79 (2009) (same); *Ciralsky v. CIA*, 355 F.3d 661, 668–71 (D.C. Cir. 2004) (finding that, pursuant to Rule 8(a), a pleading must "be simple, concise, and direct" with an "emphasis placed on clarity and brevity[.]"). The Rule 8 standard ensures that a defendant receives fair notice of the claim being asserted so that they can prepare a responsive answer and an adequate defense and determine whether the doctrine of res judicata[9] applies. *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C.

---

[9]     The Court notes the particular importance of notice pleading in this case, because this is not the first time that Plaintiff has raised these types of claims against the federal government and others. Plaintiff himself draws attention, *see* Attach. at 7, to *Fontanez v. FBI*, No. 07-cv-02376 (N.D. Ill. filed Apr. 30, 2007). That lawsuit, filed by Plaintiff against the United States, the FBI, and a federal officer, was dismissed with prejudice by the United States District Court for the Eastern District of Illinois because it was barred by res judicata; Plaintiff had already filed a substantially similar case that had been dismissed with prejudice. *See id.* at Judgment, ECF No. 5, and Dismissal Order, ECF No. 4 (citing *Fontanez v. FBI*, No. 06-cv-06982 (N.D. Ill. filed Dec. 21, 2006) at Dismissal Order, ECF No. 9) (dismissing case with prejudice as frivolous against the FBI and several federal officials where plaintiff made "elaborate contentions" alleging that wrongdoers conspired "to steal his name and identity, which are collectively worth billions of dollars worldwide, in order to fund a domestic terrorist plot.")); *see also, e.g., Fontanez v. USMS*, No. 06-cv-07122 (N.D. Ill. filed Dec. 26, 2006) at Dismissal Order, ECF No. 6 (noting substantially similar cases filed by Plaintiff and dismissing suit "with prejudice on the merits" for failure to state a claim against the United States Marshals Service and three federal officials, where Plaintiff alleged that the government was complicit in wrongdoing committed by "Chicago organized crime and a domestic terrorist organization engaged in the racketeering of [his] monies, the theft of [his] name and likeness, the identity theft of [his] identify[,] the illegal acquisition of naming rights, movie rights, intellectual property rights, etc."); *Fontanez v. Negrete*, No. 06-cv-07145 (N.D. Ill. filed Dec. 27, 2006) at Dismissal Order, ECF No. 6 (noting that Plaintiff was a prolific-filer and dismissing case against U.S. Immigration and Customs Enforcement and federal agent with prejudice as frivolous because "[t]he rambling allegations in this case appear[ed] to be the result of a paranoid delusion including allegations that [P]laintiff's privacy ha[d] been invaded by being filmed and [P]laintiff's proclamation that [P]laintiff is embracing values exemplified by the governmental hero Batman."). And here, notably, "[a]lthough the [P]laintiff names as the defendant in this action a party not named in the prior action," the Commandant is nonetheless "in privity with the defendants sued in the prior action." *Lewis v. DEA*, 777 F. Supp. 2d 151, 161 (D.D.C. 2011) (dismissing APA challenge because "for purposes of res judicata, privity exists

1977).  When a pleading "contains an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments [,]" it does not fulfill the requirements of Rule 8.  *Jiggetts v. D.C.*, 319 F.R.D. 408, 413 (D.D.C. 2017), *aff'd sub nom. Cooper v. D.C.*, No. 17-7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017).  Plaintiff's Complaint and its supplements all fall squarely into this category.

*Second*, Plaintiff's intended constitutional tort claims, *see* Compl. at 1, if any, are entirely undefined.  Plaintiff cites in passing to § 1983, *see id.*, but § 1983 "does not apply to federal officials acting under color of federal law."  *Settles*, 429 F.3d at 1104.  And even if Plaintiff had instead relied on § 1983's federal analog, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), he nonetheless fails to articulate the deprivation of a protected right, and this type of federal question "must affirmatively appear clearly and distinctly[,]" *Johnson v. Robinson*, 576 F.3d 522, 522 (D.C. Cir. 2009) (citing *Bilal v. Kaplan*, 904 F.2d 14, 15 (8th Cir.1990) (per curiam)).  In other words, "[e]vents may not have unfolded as Plaintiff wished, but his dissatisfaction" cannot "form a basis" for a constitutional violation.  *Melton v. District of Columbia*, 85 F. Supp. 3d 183, 193 (D.D.C. 2015), *aff'd*, No. 15–70432015, WL 9012019 (D.C. Cir. Oct. 30, 2015).

*Third*, the circumstance that Plaintiff challenges is not, by definition, a "final agency action," *see* 5 U.S.C. § 704, which is a prerequisite to judicial review, *see id.*; *see also McCoy v. Cardamone*, 646 F. Supp. 1143, 1144–145 (D.D.C. 1986).  Here, Plaintiff opposes the Commandant's decision to "ignore" "new evidence" that he submitted in March 2021.  *See* Compl. at 1; Err. at 1; Opp'n at 3.  As discussed, Plaintiff's submissions of new evidence—all attached as exhibits to the Complaint—consist of "13 emails," Compl. Exs. at 30–31, sent from Plaintiff to

---

between officers of the same government[.]") (citations omitted), *aff'd*, No. 11–5152, 2012 WL 1155698 (D.C. Cir. Mar. 8, 2012).

the Commandant, Counsel, and countless other entities and individuals, *see id.* at 17–24, 30–69, 92–101.  As discussed above, these emails are fantastical and opaque.  Moreover, they do not include any DD Form 149s, and further fail to comply with the procedural requirements set forth in § 1552 and 32 CFR § 723.3.  *See id.*   To that end, on April 5, 2021, the Office of the Commandant sent a prompt reply email to Plaintiff, confirming that his emails and attachments had been received and forwarded to Counsel.  *See* Compl. Exs. at 24.  Shortly thereafter, the Office of the Commandant followed up with Plaintiff by email, indicating that "after careful review of the documentation" neither the Office nor Counsel were "able to process [Plaintiff's] request forward due to the Commandant not being in a position required to take any further action[.]"  *Id.* at 21.  Plaintiff was also informed that he should instead properly present the information, and direct any remaining questions, to the BCNR.  *See id.*

Indeed, to constitute final agency action, two conditions must be met: (1) "the action must mark the consummation of the agency's decisionmaking process" and (2) it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted).  The Office of the Commandant's response to Plaintiff's email submissions does not meet either of the two requirements.  There is no indication that the Commandant's April 5, 2021 email response marked the consummation of the agency's decision-making process or carried any force of law; in fact, Plaintiff's request, while reviewed, was never formally processed, and he was instead referred to the BCNR.  Without a final agency action, Plaintiff cannot not ask this Court to review or otherwise intervene in his administrative proceedings.  *See FTC v. Standard Oil Co.*, 449 U.S. 232, 241 (1980); *Sw. Airlines Co. v. DOT*, 832 F.3d 270, 275 (D.C. Cir. 2016); *see also* 5 U.S.C. § 706(2).

Alternatively, if Plaintiff seeks to compel the Commandant to act, it is unclear why he, or anyone else at the agency, is obligated to do so.  "Under Section 706(1) of the APA, a court may at times compel an agency to take a *discrete* agency action that is it is *required to take*[.]"  *SAI v. Homeland Security*, 149 F. Supp. 3d 99, 109 (D.D.C. 2015) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)  (emphases in original) (internal quotation marks omitted)).  As noted, there is no indication that, as it relates to the March 2021 email submission of his "new evidence," Plaintiff has complied with the noted statutory requirements or the agency's follow-up instructions.  There is simply no legal authority or information offered to suggest to this Court that the Commandant, Counsel, or the BCNR, is required to take any action in Plaintiff's closed administrative proceedings.

But Plaintiff does not really indicate that he would like to continue his pursuit of administrative relief.  He instead asks this Court to enter "judgment in [his] favor," Opp'n at 4–5, by directly providing relief and directly ordering the Commandant to correct his record and award him back pay, pension, and benefits, *see id.*; *see also* Compl. at 1; Err. at 2; Attach. at 1; MPI at 1–3.  However, "[i]t is one thing to seek to compel an agency to respond to an administrative complaint within a reasonable time.  It is entirely another to seek to control what that response says." *SAI*, 149 F. Supp. 3d at 109.  While a court may, at times, compel an agency to act, it cannot direct "*how* it shall act."  *Id.* (quoting *Norton*, 542 U.S. at 64) (emphases in original) (internal quotation marks omitted).  Consequently, this Court can neither directly award nor compel the Commandant or the BCNR, or anyone else at the agency, to provide Plaintiff with the relief that he seeks.

*Fourth*, though he does not explicitly plead as such, to whatever extent Plaintiff seeks review of the BCNR's last-issued final agency action, dated July 28, 2015, *see* Goode Decl. ¶ 7

23

(citing BCNR Docket No. 6132-15), his claim is barred by the applicable statute of limitations, *see* MTD Mem. at 7–8.  "[E]very civil action against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).  This provision applies to "all civil actions whether legal, equitable or mixed," and "likewise applies to claims seeking to correct or upgrade the discharge of former service members." *Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 365 (D.C. Cir. 1993).  "In this context, the cause of action for upgrade of a military discharge accrues 'at the time when he began to suffer an alleged disadvantage[,]' "*Aguilar Mortega v. Dep't of Defense*, 520 F. Supp. 2d 1, 4 (D.D.C. 2007) (quoting *Walters v. Secretary of Defense*, 725 F.2d 107, 114 (D.C. Cir. 1983); citing *Kendall*, 996 F.2d at 365–66), which is normally, ". . . the date of the final agency action[,]" *Chenault v. McHugh*, 968 F. Supp. 2d 268, 272 (D.D.C. 2013) (citing *Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004)).

Importantly, standing alone, neither an application for administrative reconsideration, nor an agency's consideration of such an application, restarts or tolls the six-year statute of limitations. *See Nihiser v. White*, 211 F. Supp. 2d 125, 129 (D.D.C. 2002) ("To do this would provide a plaintiff to have the power to avoid the jurisdictional bar every time he submitted an application which was considered by the Board . . . [and] would make 28 U.S.C. § 2401(a) meaningless.").  "This rule prevents litigants from using the filing of applications for reconsideration to delay the running of the six year statute of limitations indefinitely, thereby thwarting those practical ends which are to be served by any limitation of the time within which an action must be brought." *Id.*; *see Lewis v. Sec. of Navy*, 892 F. Supp. 2d 1, 7 (D.D.C. 2012) (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997) ("Interpreting the statute of limitations to" automatically restart from the date of resolution of "the plaintiff's last administrative appeal, regardless of when the administrative

24

appeal was filed, would allow the plaintiff to toll the limitations period 'indefinitely,' which would certainly "create [ ] a limitations period . . . longer than Congress could have contemplated.' ")).

"Only 'when the agency has clearly stated or otherwise demonstrated,' that it has *reopened* the proceeding will the resulting agency decision be considered a new final order subject to judicial review under the usual standards." *Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C. Cir. 1997) (emphasis added) (quoting *Morris v. Sullivan*, 897 F.2d 553, 558 (D.C. Cir. 1990)).  For example, "if an agency denies a petition for reconsideration" that sets forth " 'new evidence' or 'changed circumstances,' the agency's denial is reviewable as a final agency action." *Id.* at 166; *see Lind v. McHugh*, No. 10–2207, 2014 WL 8807401, at *7 (D.D.C. Aug. 7, 2014) (same in § 1552(a) matter); *see also Peavey v. United States*, 128 F. Supp. 3d 85, 100–02 (D.D.C. 2015) (Board's review of service member's application "constituted a re-opening of Plaintiff's case, and its decision, a new and final agency action" because the committee conducted a substantive review of the merits);  *Fulbright v. McHugh*, 67 F. Supp. 3d 87, 92 (D.D.C. 2014) (same), *aff'd*, 650 Fed. Appx. 3 (D.C. Cir. 2016).

Here, despite ultimately denying relief, there is no dispute that the BCNR reopened Plaintiff's administrative proceedings when it reviewed Plaintiff's DD Form 149, dated May 5, 2015, because it admittedly considered new evidence and issued a new final order.  *See* MTD Mem. at 7; Goode Decl. ¶ 7 (citing BCNR Docket No. 6132-15).  Therefore, the statute of limitations began to accrue on July 28, 2015, when the BCNR issued its determination by letter to Plaintiff, denying relief upon reconsideration on the merits.  *See id.*  Plaintiff's deadline to file suit expired on July 28, 2021, *see* 28 U.S.C. § 2401(a), and he did not file until August 2, 2021, five days beyond the deadline, when he placed the Complaint in the courthouse's filing depository drop box, *see* Compl. at 1.

Section "2401(a)'s time bar is nonjurisdictional and subject to equitable tolling." *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020), *cert. denied*, 141 S.Ct. 875 (2020).  To establish that Plaintiff "is entitled to the benefit of equitable tolling," he must meet a "high threshold," by demonstrating "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Id.* (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "[E]quitable tolling [is] appropriate only in 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.' " *Head v. Wilson*, 792 F.3d 102, 111 (D.C. Cir. 2015) (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014)).

Although Plaintiff's Complaint was only five days beyond the deadline, he offers scarce argument in support of equitable tolling.  He seems to argue that the statute of limitations is inapplicable because he discovered that his record was falsified based on the "new evidence" that he submitted to the Commandant in March 2021.  *See* Opp'n at 3–4.  The Court does not find this argument persuasive.  As discussed above, Plaintiff's emails from March and April 2021, and the correspondence from the Commandant arising therefrom, bear no legal force, and therefore, can have no effect on the existing statute of limitations.  And even if the Commandant's April 5, 2021 response email to Plaintiff somehow constituted a formal agency action, which the Court does not concede, there was no merits review, so it cannot serve to reopen the administrative proceedings, and consequently cannot toll or to restart the running of the statute of limitations.  *See Sendra Corp.*, 111 F.3d at 167; *Battle v. Sec'y of Navy*, 757 F. App'x 172, 178 (3d Cir. 2018); *Nihiser*, 211 F. Supp. 2d at 129.  In fact, as noted above, after the BCNR's formal agency action on July 28, 2015, Plaintiff's subsequent applications for reconsideration have resulted, *each time*, in outright rejections. *See* Goode Decl. ¶ 8; MPI Exs. at 1–5, 8–11, 12–15.  Plaintiff does not contest

26

this fact.  *See* Compl. at 1; Err. at 1.  Consequently, none of his subsequent attempts at reconsideration resulted in the reopening of his administrative proceedings, or to toll or restart the running of the statute of limitations. *See Sendra Corp.*, 111 F.3d at 167; *Battle*, 757 F. App'x at 178; *Nihiser*, 211 F. Supp. 2d at 129.

In opposition, Plaintiff also seemingly contends that he has been diligently pursuing his rights.  First, in support, he cites to *Lipsman v. Sec. of Army*, 335 F. Supp. 2d 48 (D.D.C. 2004), *see* Opp'n at 1, 4, but *Lipsman* bears no relevance to the issue of the statute of limitations, or to this matter in general, *see Lipsman*, 335 F. Supp. 2d at 50 (noting that the plaintiffs in that matter "challenge[d] an amendment to the governing regulations of the Army Board for the Correction of Military Records[.]").

Second, Plaintiff seems to argue that his diligent efforts are evidenced by (1) his March 2021 submissions to the Office of the Commandant and, (2) his history of efforts to seek administrative reconsideration.  *See* Opp'n at 4.  However, Plaintiff has not properly filed a formal application to the BCNR for reconsideration since his unsuccessful attempt in March 2018, *see* Goode Decl. ¶ 9; BNCR Docket. No. 6132-15 (resulting in outright rejection); *see also* MPI Exs. at 1–5, 8–11, more than two years before the filing of this lawsuit.  The subsequent efforts upon which he relies consist of the prolix emails that he sent to various entities and individuals. *See* Compl. at 1; Err. at 1; Opp'n at 3; Compl. Exs. at 17–24, 30–69, 92–101.  Those emails are inscrutable, fantastical, and accusatory, and simply cannot be characterized as a means of diligent pursuit.  *See id.*

Notably, Plaintiff, though *pro se*, is an experienced litigant.  A search of Plaintiff's name on PACER reveals that he had filed, before initiating this case, approximately 26 civil cases, including some in this District, and he pursued a handful of those matters on appeal.  From the

inception of this matter to date, Plaintiff has resided in the District, not far from the courthouse. He has offered no valid explanation why, despite six years[10] to do so, he could not timely file this matter. As a result, and although only five days late, any challenge to the BCNR's July 28, 2015 agency action is not subject to equitable tolling. *See Worthington v. Office of Nat'l Drug Control Policy*, No. 19-0081, 2020 WL 1509167, at *7 (D.D.C. Mar. 30, 2020) (finding that while plaintiff had previously "pursued his rights diligently in some circumstances," including "prior administrative filings," and other lawsuits, he failed to identify "any facts that would suggest that his ability to bring" the relevant lawsuit "was impaired in any way" or that he otherwise faced an "extraordinary circumstance"), *aff'd*, No. 20-5113, 2020 WL 9311952 (D.C. Cir. Nov. 12, 2020), *cert. denied*, 141 S. Ct. 2738 (Jun. 7, 2021). And the Court does not find that there is any injustice in declining to equitably toll the statute of limitations, *see Head*, 792 F.3d at 111, due to the many other noted deficiencies and frivolousness of Plaintiff's claims.

For this reason, and all of the other noted reasons,[11] the Commandant's Motion to Dismiss will be granted in full and this matter shall be dismissed.

---

[10]     Insofar as Plaintiff attempts to bring a *Bivens* claim, "a three-year limitations period applies[,]" *Berman v. Crook*, 293 F. Supp. 3d 48, 56 (D.D.C. 2018) (citing *Banks v. Chesapeake and Potomac Telephone Co.*, 802 F.2d 1416, 1429 (D.C. Cir. 1986) (three-year limitations period in D.C. Code § 12–301(8) applies to most Bivens actions)), "and the claim accrues at the time a plaintiff learns of the conduct," *id.* (citation omitted). Plaintiff alleges that he has been aware for several decades of an ongoing conspiracy by the government and others to harm him, *see* Compl. at 1; Err. at 1; *see also, e.g.,* Compl. Exs. at 32–38; MPI Exs. at 6. Therefore, any intended *Bivens* claim, assuming *arguendo* it could be discerned, would be even more untimely than his APA claims.

[11]     Even if Plaintiff's claims were still somehow cognizable, they likely would face yet another jurisdictional barrier because, it appears that they are subject to the Tucker Act, 28 U.S.C. § 1491(a)(1). Here, although Plaintiff does not demand a specific amount of money, he explicitly asks this Court to enter judgment in his favor, Opp'n at 4–5, and to issue an order directing the Marine Corps to compensate him for decades of back pay, pension, and other benefits, *see id.*; Compl. at 1; Err. at 2; Attach. at 1; MPI at 1–3; *see also* MPI Exs. at 6 (stating that he joined the Marine Corps in 1984); *id.* at 13 (stating that he has worked "continually" for the United States

## IV.  PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION

Plaintiff also moves for a permanent injunction.  *See* MPI at 1–2; Compl. at 1; Opp'n at 4–5.  He seeks an injunction against "anyone including Defendant from [engaging in] identity theft of Plaintiff."  MPI at 1.  He contends that his "name/likeness [is] worth billions" and that the Commandant and many others are engaged in a "grand larceny scheme[.]"  *Id.*  He intends to protect his name and likeness, as well as the "copyright" for his book series, "AmericasFirstBill.com – America First Project – the Real 911 – Amazonbooks.com."  *Id.*  He also believes that Congresswoman Holmes Norton, who previously assisted him in applying for reconsideration with the BCNR, *see* MPI Exs. at 1–5, 8–11, has joined the existing conspiratorial criminal enterprise against him, *see* MPI at 2–3.  He believes that she is a co-conspirator in the ongoing plot to forge his military records, steal from him, and murder him.  *See id.* at 3.  He maintains that her involvement in the conspiracy is evidenced by the documents that she submitted on his behalf to the BCNR.  *See id.*; *see also* MPI Exs. at 1–5, 8–11, 16.  He takes particular issue with a communication that she made on his behalf, in which she indicated that he was struck by a Time Warner Truck.  *See* MPI at 3; MPI Exs. at 16.  He believes that she intentionally mischaracterized the nature of the events, concealing that he was actually "targeted by Time

---

government for decades); Compl. Exs. at 23 (alleging that the government has unfairly withheld "billions" from him), and to refrain from taking certain actions against him; *see id*. at 134; Opp'n at 4–5; Compl. at 1; Err. at 2; Attach. at 1; MPI at 1–3.  Simply put, Plaintiff is foreclosed from "making an end-run around the Tucker Act by failing to request a specific amount of money." *Roseberry-Andrews v. Wilson*, 292 F. Supp. 3d 446, 455–56 (D.D.C. 2018) (citing *Schwalier*, 734 F.3d at 1221; *Palacios v. Spencer*, 267 F. Supp. 3d 1, 5–7 (D.D.C. 2017) (collecting cases), *appeal aff'd in part and dismissed in part*, 906 F.3d 124 (D.C. Cir. 2018); *Aguilar Mortega*, 520 F. Supp. at 6–7. And because Plaintiff "seeks to invoke the Court's authority to obtain monetary relief by ordering the [BCNR] to provide it to [him], rather than by merely instructing the [BCNR] to conduct further proceedings, [] he seeks relief that is not similarly dependent on subsequent administrative proceedings." *Roseberry-Andrews*, 292 F. Supp. 3d at 456.

Warner "in a sneaky plot to steal [his publicity rights] [ ] worth as much as 'Batman[.]' "). *See* MPI Exs. at 16.

"The standard for issuance of the extraordinary and drastic remedy" of a restraining order "is very high . . . and by now very well established." *RCM Techs., Inc. v. Beacon Hill Staffing Grp., LLC*, 502 F. Supp. 2d 70, 72–3 (D.D.C. 2007) (internal quotation marks and citation omitted). Such remedy should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original) (citation omitted). A court considers the same factors for a request for a temporary restraining order or a permanent injunction. *See Price v. U.S. Dep't of Justice*, No. 18-cv-1339, 2019 WL 2526439, at *3 (D.D.C. June 19, 2019) (quoting *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 72 (D.D.C. 2001)). These factors are: "(1) the movant's showing of a substantial likelihood of success on the merits, (2) irreparable harm to the movant, (3) substantial harm to the nonmovant, and (4) public interest." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009) (citation omitted).

Plaintiff does not address any of these factors. Instead, he makes the same broad and frivolous conspiratorial allegations that were already raised in his other pleadings and motions. *See* MPI at 1–5. Therefore, he fails to meet the high standard required for the entry of a permanent injunction. *Newby v. Obama*, 681 F. Supp. 2d 53, 56 (D.D.C. 2010) (denying permanent injunction and dismissing complaint as frivolous because "it appears that its claims relating to alleged government surveillance and harassment are of the sort of bizarre conspiracy theory"); *Walsh*, 900 F. Supp. 2d at 61–62 (same).

## V.  CONCLUSION

For the reasons set forth above, the Commandant's Motion to Dismiss, ECF No. 17, is GRANTED and this case is dismissed. Plaintiff's Motion for Permanent Injunction, ECF No. 6, is DENIED. Plaintiff's First Motion for Order, ECF No. 24, and Second Motion for Order, ECF No. 27, are both DENIED as moot. A separate Order will be issued contemporaneously.

DATE:   August 24, 2022

                                   _/s/_____
                                     RUDOLPH CONTRERAS
                                     United States District Judge